The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Okay, good morning. This is Judge Chen and today we have just one argued case. Appeal number 19-1878 Exmark Manufacturing Company v. Briggs & Stratton Corp. Given that we only have one argued case today, I think what I'd like to do is give both sides, instead of 15 minutes, 17 minutes so that when Mr. Wolf leads off, I'd like to change the time so he has 13 minutes of an opening and then keeps four minutes of rebuttal. And then likewise, Mr. Vandermerk, if he needs it, can use 17 minutes. And that way, given all the potential for crosstalk, we can ensure that everyone has a full opportunity to be heard today. Mr. Wolf, whenever you're ready, please begin. Thank you, Your Honor, and good morning. This is Matt Wolf for Briggs. For the district court to find the sole asserted claim valid as a matter of summary judgment required both a counterfactual assessment of the simplicity prior art mower and a constantly shifting claims instruction. Putting aside the markman issues for the moment, a jury could plainly find that simplicity does have both a baffle and a discharge opening. As to the first, the district court incorrectly found that the simplicity baffle, or excuse me, was not spaced apart from the mower and did not have a meaningful effect on air and grass flow. These requirements are not part of the claims, but even if they were, simplicity, in fact, has them. Simplicity's baffle is an entirely separate structure from the front wall. It is bolted into the mower after manufacture and spaced from the front wall by rubber deflectors. XMARC concedes that the baffles control the flow of air and grass by the V-shaped elements, the three V-shaped elements visible from the pictures. Moreover, the baffles extend lower to the ground than the front wall, and as a result of the tab structure, they jut out horizontally at the bottom from the front wall to further control air above and beyond what the deck alone would do. And by the way, simplicity itself referred to the structure as baffles in its specifications. Mr. Wolf, this is Judge Chen. Yes, Your Honor. Is it your view that if the simplicity baffle was nothing more than a very thin metal plate that was mounted against the front wall and didn't hang lower or anything else like that, it's just a very thin flat plate? In your view, would that satisfy the limitation of a first flow control baffle? The answer is yes, and that's in part because the specification specifically says that the baffle and the wall can be one and the same. Now, the claims call for a separate baffle, so you would need a separate piece of metal. So the answer would be yes, Your Honor, but of course that's not what we have here. It is spaced apart, as I said. But could you explain, I'm sorry, could you explain why we should, in your view, understand nothing more than a flat plate mounted all along the front wall to count as a flow control baffle if in that situation the baffle is doing nothing more than what the front wall would do without any mounting plate sitting there? Your Honor, I understand your question, and I understand why my answer may be counterintuitive, and it's really driven by the specification, which says that A240, back wall 36 may be eliminated with the flow control baffle 68 forming the back wall of the molar deck. So I think what the specification is saying there is that the baffle is what affects the flow of air. It can be one and the same thing as a wall, and so the logic would extend. And again, we don't need to go this far for purposes of this appeal, so I don't think we're arguing that any of this is necessary for you to find a fact question for purposes of the jury, but the logic of the specification is as long as you have a separate structure, as long as it is in between the blades and the front wall, that it doesn't matter whether it conforms to that front wall, it can still serve as a baffle. That's the best answer I can give you to that, I don't want to say counterfactual, but that hypothetical situation. And that's, I think, definitional based on the specification. Mr. Wolf, this is Judge Lynn. What do you think the claim construction was that the district court adopted? Is the initial claim construction that the parties agreed to, or the meaningful effect and space to weigh limitations that were discussed later? Your Honor, that's a great question. Expressly, what it adopted was a structure within the walls of the mower deck that controls the flow of air and grass clippings. That's what would have appeared, presumably, in any jury instructions after closing argument. But those constructions, that construction was then further construed by His Honor, and said that implicit or carried with that was the meaningful effect and the space-to-part limitation. And not just meaningful effect and space-to-part, but meaningful effect and space-to-part for the entire length of the baffle. And this is why I was pushing back a little bit on Judge Chen's hypothetical, because there is no doubt that the V-shaped elements of His Honor's construction. But the reason that didn't... Sorry, Mr. Wolf. Just to confirm, my understanding, my recollection was that the district court on remand expressly rejected any notion of relying on some meaningful effect consideration with the separation requirement that was needed between the front wall and the baffle. Am I wrong about the meaningful effect part? Respectfully, I believe you are, Your Honor. Appendix 42, the last sentence of the first full paragraph, His Honor writes, the concept of a meaningful effect is subsumed within the notion of control of the flow of clippings. So that is what I meant by further construed their construction or implicit. So it was not part of the words of the construction, but certainly it was on the district court's mind when it rejected simplicity as a matter of law as either anticipatory or obvious prior art, obviousness prior art. Mr. Wolf, this is Judge Stoll. What do you think meaningful effect and control means? I understood that to simply mean that the baffle has to actually control the flow of clippings, and that's the same thing as meaningful effect. Do you have a different understanding? I don't. The devil was in the details here, Your Honor, though, because we have Exmark's admission that the simplicity baffle controls the flow of air, but they've had two further implicit elements to that. One is it has to have a meaningful effect along its entire length. So if there are portions that are not doing anything and portions that are, somehow that counts as no longer a flow control baffle. And then also the notion that it is not, it has to be meaningful effect as opposed to its absence. So that would read out the specification language I was talking about earlier where a baffle on the front wall, at least for a period of time, can share metal as contemplated by the specification. But so it's, we don't have a problem with the notion that a baffle has to, in some way, control the flow of air. It admittedly does. Exmark concedes it does. The question is, why does it need to control it for the entire length as opposed to the absence of the wall? That was not the construction that the parties agreed to. That was not the construction that was used to find that our product infringed, that our original and product infringed, because there was no evidence that our original product controlled the flow of air along its entire length. There were clearly portions that did, just as there are clearly portions of Exmark that does. And the, I mean, excuse me, the simplicity of it does. We believe all of it does. But the point, did I answer your honest question? I apologize if I got off on a tangent there. No, no, you answered it. Thank you. Yes. So briefly, moving to the issue of the in the re-exam that it existed in simplicity and it confirmed that fact on appeal. And dependent claim four makes plain that a discharge opening still exists, even if a mulching baffle is covering it. And just so we are all talking about the same thing, I don't know if your honors have available to you page 15 of our opening brief. It may be the biggest and best picture of the underside of the simplicity deck. We do have it, counsel. Thank you, your honor. If you look for the, yep. This is a photo of simplicity with the mulching kit installed. Is that right? That's correct, your honor. The underside of the decks was tilted upright. And we see on the green and the orange and the yellow is the baffle. And then when the yellow ends on the left side, you see a semi-circular black piece of metal. That's the metal that closes off the discharge opening. If you look to its left, you see a vertical orange piece of metal. That's the discharge opening itself. The reason you see something there is because the top of the discharge opening has metal, but then there's a gap. So you can see that the discharge opening very much still exists. And indeed at the top and the bottom, there's, I don't know how many inches that is, but there's a gap. You can actually see white in between. The discharge opening very much still exists, even though the flow of air is cut off by that mulching baffle. And that's, of course, precisely what claim four, dependent claim four is talking about. What you see is simplicity is an embodiment of dependent claim four, and therefore necessarily also an embodiment of independent claim one. Mr. Wolf, this is Judge Shen again. When I was reading this patent, it's a rather brief patent in terms of its written description and then looking at claim one and claim four. What becomes clear to me is that this patent is a configurable side discharge mower in that it was known in the art that you could convert a side discharge mower into a mulching mower by adding some plates inside the mower deck to close off the side discharge opening. And when I see claim one referring to a discharge opening and then a first flow control baffle and all the other elements, it appears that claim one, by calling for a discharge opening to be formed in the sidewall, is in fact directed to a side discharge mower that through claim four, we understand, can be reconfigured through the addition of extra parts to convert the side discharge mower into potentially a mulching mower that can be reconfigured back into a side discharge mower. And so, in that sense, why would it be wrong to conclude, which I believe the district court did, that any infringing or anticipating mower would have to be able to function as a side discharge mower with all the elements recited in claim one, including the flow control baffle? So, let me answer that two ways, Your Honor. One is that simplicity could, in fact, operate the way, even if that was correct as claims instruction. The piece of metal that covers the discharge opening is a separate piece of metal. You could, if you're looking at page 15 again, you could take the metal to the left of the yellow line off, and then you would indisputably have even X marks review of claim one. So, these are three different pieces of metal that are put into the plate in the simplicity package, and they're actually put in order of left, right, and then the discharge opening. Mr. Wolfe, that would be a 103 argument, right? No, Your Honor. I think it would be a 103, well, it is a 103 argument, but it is also a 102 argument, because as you put in the simplicity mower per the instructions, I gather that's my time, as you put in the simplicity baffle for 28395, appendix 28395, you put in the right and the left, and at that point, you have claim one indisputably under X marks instruction. You then subsequently put in the piece of metal that closes the discharge opening, so that's still anticipatory, and of course, we respectfully say that claim four under the law, that the discharge opening must still exist, or claim four is made a nonsense of, and the PTAB, even on appeal, agreed with that. Mr. Wolfe, I'll give you a little more time, but could you, you said you had a second reason, could you quickly touch on that, or did you already include that? I did, Your Honor, that was the, and we talked about this at some length, which is that claim four must encompass claim one, and so when it says, it closes said discharge opening, the discharge opening must still exist, even if closed, but all of this is, of course, replete with facts. I mean, our expert says it would have been obvious, as Your Honor pointed out, to just take that plate off, if that's what you wanted to accomplish, but even when you're constructing it, there's a period where the plate isn't on, and so you have an, even under X marks construction, an anticipatory mower at that point in time. Okay, thank you very much. We'll now hear from Mr. Vandenberg. Mr. Vandenberg, whenever you're ready, please begin. Thank you, Your Honor, and may it please the court. The invention of X marks 863 patent was an important advance in side discharge mowing for the commercial mowing industry. It allowed landscape contractors to mow faster while maintaining a high quality of cut, making them more productive and more profitable. It also played a major factor in transforming X mark from a small player in the market to the market share leader, and it was copied by many commercial mower manufacturers. Mr. Vandenberg, I'm sorry, this is Judge Chen. You only have a limited amount of time. Could you actually just speak to the arguments? Yes, I want to start with the issues of claim construction, but I want to start by talking about the many cases of this court that reiterate that claims must be construed consistently with what the claims, the specification, and the prosecution history show that the inventor actually invented. Usually, those cases come up in the context of infringement, where the argument is a patentee trying to cover something that their invention was never intended to cover. Well, of course, it all comes down to the actual words of the claim. So if there are particular words of the court to focus on, could you please go right to that and then tell your story from those words? Yes, Your Honor. First of all is the issue of the discharge opening. As Your Honor indicated, the 863 patent tells us that it's disclosing a mower that is operable in two configurations. The configuration of claim one has a discharge opening, as well as the specially shaped flow control baffles that the specification tells us efficiently transport air and grass clippings across the deck and out through that discharge opening. And then you have the dependent claims, like claim four, that claim the second configuration, which adds the removable mulcher baffles that when installed, close the discharge opening. The only logical way to read those two claims together is to conclude that in the configuration of claim one, the discharge opening needs to be open and available to discharge air and grass. If there's one... Why is that? Because... Right now, the claim just calls for an opening. No, I'm sorry, Your Honor. And now you are arguing that this structural opening needs to be open rather than potentially closed. But as we all know, claim one is a comprising claim. And so therefore, additional elements can always be added to a comprising claim and still anticipate or infringe. Your Honor, the claim does require more than just an opening. It requires a discharge opening. We have to give all words in a claim meaning. And to give the word discharge meaning there, it has to be a particular type of opening, one that is available to discharge grass. Yes. Excuse me. This is Judge Lind. What is the function of the opening in the patent if it's not to discharge? Oh, 100 percent. The opening in the sidewall in the patent is there to discharge. Isn't that the same in the simplicity structure? The thing about the simplicity structure is that in the configuration they point to to invalidate it, you have the mulch kit installed that has closed that discharge opening. No, but the opening is still there and the opening is and forever will be a discharge opening. That's its only function, correct? But it does not, it cannot perform that function when the mulch kit is installed. Again, the specification here also reiterates that a mower is a side discharge mower or a not. Not just that there is an opening in the sidewall, but that that opening is capable of discharging air and grass clippings. An analogy that we've thought about is if I'm in a locked room, you know, there's a doorway but it's closed and it's locked and there's no key. Is there an exit opening from that room? I would submit to your honors that there is no exit opening. If there's no ability to open that door and exit, it's not until the door has been unlocked and opened that there is an exit opening. In the same way, when the mulch kit is installed, you may be able to still look behind there and see an opening, but it's not a discharge opening because air and grass clippings cannot discharge through that opening. It's only when it's removed that you have an opening and when it's removed you also have no structure in front of the blades. And in fact, as we pointed out in our brief, simplicity is really just another example of the conventional wisdom that says when you're side discharge mowing, keep nothing in front of the blades. And it's only when you're trying to mulch that you install baffles in front of the blades together with a structure that closes the discharge opening. I also do want to talk... This is Jeff Lynn again. What language in the claims requires that the baffle be spaced apart from the front wall for the entire length? Right. There is lots of claim language that supports that conclusion. First of all, again, is the very words flow control baffle that is telling you... This was a coined term and it's talking about a structure that controls the flow. And the point that we made... What does that have to do with being spaced apart from the front wall? The point is that if you're simply talking about a thin plate that runs along, contacts, conforms, creates a thicker front wall, there is no evidence that merely creating a thicker front wall has any control, has any effect on the flow of air and grass clippings. But your honors, it's not just that language. There is other language that leads you to the same result. And again, we construe claims not with each term in isolation, but we look at the claims terms together as a whole to make... Mr. Vandenberg, this is Judge Chen. Yes. If I recall correctly, the district court judge seemed to be persuaded by evidence he heard at trial that you will improve performance with your baffle if your baffle is spaced away from the front wall because it further reduces blowout. And to me, I thought that was a peculiar way to rely on that to construe flow control baffle when there's nothing in the intrinsic evidence that talks about how this baffle is designed to optimize the reduction of blowout under the front wall. Your honor, courts are allowed to consider extrinsic evidence in the course of claim construction. And since one of the issues here is, is a space important? It was appropriate for him to consider that extrinsic evidence. And in fact, to the extent that... But to me, he seemed to be suggesting the best mode of offering a baffle would be to space it away from the front wall. Not that you ultimately have a non-functioning baffle if it's somehow pressed up against the part. That didn't seem to be what he was saying. He was talking about what is the most optimal design for a baffle vis-a-vis the front wall. And so that's my concern. And moreover, I don't see anything in your specification that necessarily defines baffle in that particular manner, i.e., requiring the baffle to be spaced apart all the way along the front wall. Well, let's look at the other claim language, your honor. We also have a requirement that the baffle be located between the blades and the front wall. If you were trying to cover a structure that merely had thin plates running along the front of the mower, you would never use that phraseology. As we say in our brief, if you're talking about a claim of hanging paneling in a room, you wouldn't say that that paneling depends downwardly from the ceiling of the room between the walls of the room. You'd say it's been attached to the wall and it becomes part of the wall. Here, the claims say that the front flow control baffle needs to be located within the walls of the mower deck and it The other things that the claims require is they require that the walls have inner surfaces and that the walls define a downwardly directed opening. Again, further indication that the claim language, the flow control baffles, are not to be construed to cover just long plates that are running along conforming to the front wall. We're not disputing that those three short V-shaped pieces in simplicity are baffles. But if your honors, and I would suggest instead of looking at page 15 of Briggs' brief where they've sort of hidden the actual structure under their thick, annotations, that the court look at page 15 of our brief where you can see that the only thing that's located between the blades and the front wall are those three V-shaped pieces. The remainder of it is not. To clarify for the court on this issue of portions, and Mr. Wolfe is trying to use that term broadly to say, you know, any portion he can think of, and this one-inch section or this two-inch section over there, that's not what the reference to portions is. Remember that this claim defines the shape of the flow control baffle with great specificity, requiring a first arcuate portion, a first elongated and substantially straight portion, a second arcuate portion. That's what the reference to portions is. This is Judge Linnigan. Why would a baffle be ineffective or flow control merely because it conforms in part to the front wall? Your Honor, again, we're not disputing that those V-shaped pieces have an effect, but those V-shaped pieces don't get you the various portions required by the claim. Well, I don't think you're answering my question. I'm sorry. Why would a baffle be ineffective for flow control merely because it might conform in part to the shape of the front wall? Your Honor, it might still have some effect on flow, but the various portions would not, and the portions you would be looking at would still not be located between the blades and the front wall. If the baffle was a separate structure? Again, Your Honor, I respectfully submit that at least the portions that run along contact and conform to the front wall would not be. Why are they not functioning to control flow? I mean, they may not be adding anything to the flow control that would otherwise be provided by the front wall itself if there had been no baffle, but nonetheless, if there is a baffle in between the front wall and the mower blades, that structure has a flow control effect, does it not? I'm not clear why you're thinking that. Is it because of the fact that the air contacts that surface? Because that is an issue that was addressed specifically by the Patent Office, and it's a recognition of the fact that not everything inside the deck that affects the flow of air and grass clippings is a flow control baffle. The blades unquestionably control the flow of air and grass clippings. They have a big effect on it. They are not flow control baffles. The deck walls, we're not disputing the deck walls have an effect on the flow of air and grass clippings, but the question is whether the simplicity structure has all of those required elements of the claims in addition to a flow control baffle that is located between the blades and the front wall that projects downwardly from the top wall that despite their presence still leaves the deck with walls that have interior surfaces and that define a downwardly directing opening. You look at all of that material together. Mr. Vandenberg, why do you think simplicity refers to those plates as baffles? Well, of course, they have to call the part in their part manual something. That's right. And we don't dispute that as a whole, there are pieces of that that in fact form a baffle function. But again, at the end of the day, the issue is not what simplicity calls it. It's what our specification, our claim language specification, prosecution history as a whole indicate was invented. During reexamination, didn't you acknowledge that it's okay if the baffle makes contact with the front wall? Of course, that's, yes, Your Honor, and that is dealing with that fundamental imprecision of language that no matter what claim language you choose, parties like Briggs are going to try to argue that it means something different than what it is. Well, hold on a second. We're not talking about Briggs right now. We're talking about you. We're talking about your side. And we're talking about how your side during the reexamination communicated to the PTO and thereby the public that it was your view that a baffle can contact the front wall. And so therefore, it doesn't necessarily have to be constrained to be completely separated all across the length of the front wall. Am I wrong about that? Your Honor, what we said is that it can touch at a single point. We're making the point that just because it touches at a single point would not prohibit it from being a flow control baffle. One of the requirements of the claim is that you have a substantially continuous baffle. It has to run substantially continuous. Okay. So now, I guess, just so I understand your position before you have to go, you're no longer pushing the idea that the baffle has to be completely separate all the way along across the front of the mower. It can touch the front wall once, but no more than once. Is that your view? Portion that either touches, I mean, at a single infinitesimal point, yes, it can undoubtedly do that. And that was the point being made to the board. Okay. In addition... And can you explain why it can contact the front wall once, but not twice? Because at that point, you are not making just a thicker front wall. I would submit this, Your Honor, that even if you had, for example, a two-inch section that runs along the front wall, that portion would not be the flow control baffle as claimed. Then the issue that would need to be determined is whether there's a substantially continuous flow control baffle. The claim language contemplates that there could be discontinuities. So that's, if somebody wanted to make that, and we have no evidence that anybody ever tried to appropriate this invention by doing that, but if somebody did that, that's where the claim language would lead you. And it's completely consistent with the point that pieces of metal that simply run along contacts and conform to the front wall. Okay. Mr. Vandenberg, I think you're out of time now. Thank you very much. Thank you, Your Honor. Is this Mr. Wolf? Yes, Your Honor. Thank you. Let's give Mr. Wolf five minutes just to make sure we have even time. Thank you, Your Honor. And I will potentially not use all that five minutes absent of more questions. A couple of things, Your Honor. One, Your Honors, one, we have to remind ourselves of the posture. I know we all know this, but this was summary judgment as the anticipation and obviousness of most of what Mr. Vandenberg just said. Factually, we have expert reports and the like that vigorously disagree with it. The jury may or may not agree ultimately with Mr. Vandenberg, but that's for the jury. There is at a minimum significant disputed factual issues. And I'd like briefly then to turn to A28394, which is the specification for the mulchie mower, just so you can see everything we've been talking about, and perhaps you've had it open previously. But I just wanted to make a few points based on that. Could you repeat the JA number? Yes. JA28394. And it's a two-page document. It goes on to 395. Yes. All right. So we see in the upper left, we have the blowout that's been colored in both of the briefs. And a couple of things to note about that. First of all, Mr. Vandenberg said that you could touch once and you would still infringe, but at a certain number of times, if the baffle touches the front wall, it ceases to be a baffle. I would note that in simplicity, thanks to the deflectors marked as C, the baffle never touches the front wall. It is always separated at least by the distance of the deflectors. And then when you get to the V-shaped portions, by substantially more. Second, he made a comment about that it has to project downwardly from the mower deck. You'll note, if you look near the top, you'll see bolts coming through the top of the mower deck connecting to the baffle. These baffle portions are not only screwed into the sidewall, they are screwed directly into the top wall of the mower deck. And finally, I just note that you see the piece labeled D. It's kind of in the middle left. That's the portion that covers the discharge opening. If you take away that piece, if you just install the two baffle portions, you have claim one. If you put D in, you have claim four. This is precisely the structure contemplated by the asserted patent. This anticipates for the minimum lenders that obvious. Mr. Wolf, I still am trying to understand why it would be obvious to install just the front baffles but not install the plate that covers up the discharge opening. What was it that you argued below in your briefing on summary judgment? Yes, Your Honor. Our expert, Dennis Del Ponte, who was a 20-year engineer at John Deere, talked about this. The notion is, obviously, side discharge is if you want the grass kicked out and mulching is if you want it chopped up more and left there for fertilizer or mulch or whatever the case may be. If you wanted the flow control benefit with mulching, you had plate D in. If you didn't, you took it out. Again, that's just for anticipation. If you're talking about obviousness, then it's a much more clear line. You have the claim baffle structure. To get from A to B, no pun intended, all you have to do is remove D. That's plainly for a jury to decide whether or not that would be obvious, even if you were to decide that a discharge opening ceases to exist if you cover it. My question is, why would you remove that plate but keep the front mulching baffle plates for purposes of using simplicity as a side discharge mower? What was it that you argued for why one of Skill in the Art would be inclined to use half of the mulching kit when using simplicity for a side discharge mower? If you believe that the benefit of the baffle structure is that the curve-straight curve structure of the baffle improved airflow, you could use that improved airflow either for mulching or for non-mulching purposes. That's the punchline. I want to not get too far away from the fundamental point, though, that if we accept, and I think we should, that claim four is practiced, i.e., anticipated by simplicity as fully intended, then by definition, as a matter of patent law, claim one is also practiced and therefore anticipated. But, of course, all of this, Your Honor, is intensely factual. Did I answer your question? Yes, you did. Do you have one quick final thought? No, Your Honor. I think we've made our points, and thank you very much for your time. The whole community is very impressed with how this process is going in light of the pandemic. I hope everyone's well. Okay. Thanks very much for that. Mr. Wolf, this case is submitted. Thank you. The Honorable Court is adjourned until tomorrow morning at 10 a.m.